IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| EBONY MORGAN, | : |
| Plaintiff, | : |
| v. | : Action No. 2:16cv309 |
| CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration, | : |
| Defendant. | : |

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Ebony Morgan's ("Ms. Morgan") complaint filed pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Defendant, the Acting Commissioner of the Social Security Administration ("Acting Commissioner"), denying Ms. Morgan's claim for Supplemental Security Income ("SSI") under the Social Security Act. Ms. Morgan filed a Motion for Summary Judgment, ECF No. 19, and Defendant filed a cross-motion for summary judgment, ECF No. 21, which are now ready for recommended disposition. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002 Standing Order on Assignment of Certain Matters to United States Magistrate Judges. After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that Ms. Morgan's Motion for Summary Judgment, ECF No. 19, be

**DENIED**, the Defendant's Motion for Summary Judgment, ECF No. 21, be **GRANTED**, and the final decision of the Acting Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## I. PROCEDURAL BACKGROUND

On November 1, 2012, Ms. Morgan initially filed her application for SSI, alleging disability due to anemia, asthma, depression, and pain in her arm, back, and leg, with an onset date of January 1, 2010.[1] R. 38; 103-08.[2] Her application was initially denied on February 13, 2013, and again denied upon reconsideration on January 27, 2014. *Id.* at 38-58. Ms. Morgan then requested a hearing in front of an administrative law judge ("ALJ"), which was conducted on September 4, 2015. *Id.* at 21-37. The ALJ, Judge Tom Duann, issued a decision denying Ms. Morgan's SSI application on January 14, 2016. *Id.* at 10-17. On December 15, 2014, Ms. Morgan filed a request with the Appeals Council to reconsider Judge Duann's decision. *Id.* at 5-6. On May 27, 2016, the Appeals Council denied Ms. Morgan's request for review because the ALJ's decision was supported by substantial evidence and Ms. Morgan's claims did not warrant review, making the ALJ's decision the Commissioner's final decision. *Id.* at 1-4.

Having exhausted her administrative remedies, Ms. Morgan filed the instant complaint for judicial review of the Acting Commissioner's decision on June 22, 2016. ECF No. 3. The Acting Commissioner filed an Answer on August 31, 2016. ECF No. 13. The matter was referred to the undersigned U.S. Magistrate Judge on August 31, 2016. ECF No. 15. Ms. Morgan filed her Motion for Summary Judgment on October 31, 2016, ECF No. 19, and the Acting Commissioner filed a Cross-Motion for Summary Judgment, a Memorandum in Support,

---

[1] The Respondent's brief incorrectly stated that Ms. Morgan applied for SSI on October 2, 2012, however the record indicates that she applied on November 1, 2012. R. at 103

[2] "R." refers to the certified administrative record that was filed under seal on July 29, 2016, pursuant to Local Civil Rules 5(B) and 7(C)(1).

2

and a *Roseboro* notice on November 30, 2016. ECF Nos. 21-23. The matter is now ripe for recommended disposition.

## II. RELEVANT FACTUAL BACKGROUND

Ms. Morgan alleged her disability onset date was January 1, 2010. R. at 38. Ms. Morgan was 30 years old when she filed her application for SSI in 2013. *Id.* On September 4, 2015, Ms. Morgan testified before the ALJ at the administrative hearing. *Id.* at 22-37.

Prior to her onset disability date, Ms. Morgan was diagnosed with bronchitis and acute asthma on September 6, 2005. *Id.* at 289. She first reported to Maryview Medical Center with asthmatic symptoms on May 15, 2008. *Id.* at 311. On December 27, 2008, Ms. Morgan reported to Maryview and received treatment for a headache that resulted from an asthma attack. *Id.* at 322. On January 27, 2009, Ms. Morgan had an asthma attack and reported to Maryview for a nebulizer treatment. *Id.* at 324. Finally, on September 20, 2009, Ms. Morgan had another asthma attack and sought treatment at Maryview. *Id.* at 328. The doctor discovered that she had difficulty breathing for the last month because she her inhaler had run out and he prescribed a new inhaler. *Id.*

On November 16, 2010, a vascular study performed on Ms. Morgan's lower extremities reflected negative results. *Id.* at 200-01. On January 8, 2011, Ms. Morgan received chest x-rays after choking on a small wire attached to a piece of chicken she ate. *Id.* at 201-02. Despite her difficulty swallowing, the x-rays were normal and she was discharged. *Id.* On March 17, 2012, Ms. Morgan went to Sentara Norfolk General Hospital with complaints of abdominal pain, but the exam results were negative and Ms. Morgan was discharged with instructions to consult her gynecologist. *Id.* at 210-25. Ms. Morgan reported to Patient First with a sore throat on August 22, 2012, and the exam results indicated mild expiratory wheezing. *Id.* at 233. On December

3

11, 2012, Ms. Morgan went to Maryview with flu-like symptoms, but she left the medical center prior to being seen. *Id.* at 235. Once again, Ms. Morgan complained of pelvic pain and sought treatment at Maryview on January 28, 2013, but the results from a diagnostic study revealed normal findings. *Id.* at 242. Ms. Morgan went to Chesport Family Medical three times in January, March, and May 2013, where she complained of leg pain, stomach pain, headaches, and she sought refills for her steroid inhaler. *Id.* at 251-56. On October 31, 2013, and November 22, 2014, Ms. Morgan underwent a laparoscopy that ruled out endometriosis and any other pelvic pathology. *Id.* at 280-84. Finally, Ms. Morgan went to an orthopedist to address her back pain on August 18, 2015. *Id.* at 262, 264. The examinations and x-ray findings were both negative and the orthopedist recommended that Ms. Morgan begin physical therapy for conditioning. *Id.*

At the administrative hearing before the ALJ, Ms. Morgan testified that she was separated from her husband and lived with her seven children. *Id.* at 29-30. Ms. Morgan explained that she worked in childcare from 2011 to 2014. *Id.* at 31. After working for four years as a child care attendant, she took a brief intermission from childcare and worked at the shipyard, but left after she had an asthma attack on the job. *Id.* at 32-33. Ms. Morgan testified that she could not work because of her asthma, depression, and problems with her back and legs. *Id.* at 32-33. She also said her daily activities involved cooking, caring for children, cleaning up, and sitting in her room. *Id.* at 30-31. After an initial evaluation and reconsideration, the state agency medical experts found that Ms. Morgan was not disabled. *Id.* at 44, 56.

In August 2016, after the ALJ's decision, Ms. Morgan underwent a psychological evaluation at Churchland Psychiatric Associates, P.C., for depression, anxiety, anger, mood swings, and feeling overwhelmed and easily frustrated. ECF No 19, attach. 1. She was prescribed medication and advised to attend individual and family therapy. *Id.* at 3, 5.

4

Throughout September and October 2016, Ms. Morgan's therapist reported that her anxiety continued to improve, she did not have any panic attacks, and her focus increased. *Id.* at 2-3

## III. THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

A sequential evaluation of a claimant's work and medical history is required in order to determine if the claimant is eligible for benefits. 20 C.F.R. §§ 404.1520, 416.920; *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). The ALJ conducts a five-step sequential analysis for the Acting Commissioner, and it is this process that the Court examines on judicial review to determine whether the correct legal standards were applied and whether the resulting final decision of the Acting Commissioner is supported by substantial evidence in the record. *Id.* The ALJ must determine if:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.

*Strong v. Astrue*, No. 8:10-cv-357-CMC-JDA, 2011 WL 2938084, at *3 (D.S.C. June 27, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (noting that substantial gainful activity is "work activity performed for pay or profit."); *Underwood v. Ribicoff*, 298 F.2d 850, 851 (4th Cir. 1962) (noting that there are four elements of proof to make a finding of whether a claimant is able to engage in substantial gainful activity). "An affirmative answer to question one, or negative answers to questions two or four, result in a determination of no disability. Affirmative answers to questions three or five establish disability." *Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014) (citing 20 C.F.R. § 404.1520).

5

Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law: First the ALJ found that although Ms. Morgan engaged in substantial gainful activity from January 1, 2010 through December 31, 2014, "there [was] a continuous 12-month period [following December 2014] during which the claimant did not engage in substantial gainful activity." R. at 12. Therefore, "[t]he remaining findings address[ed] the period(s) [Ms. Morgan] did not engage in substantial gainful activity." *Id.* Second, the ALJ determined that Ms. Morgan's asthma qualified as a severe impairment under 20 CFR 416.920(c) because of her necessary and continued use of steroid inhalers to control her symptoms. *Id.* at 12-14. The ALJ found that Ms. Morgan's alleged leg and back pain, and all other alleged physical impairments, were not continuous, and thus not severe impairments. *Id.* at 13. Furthermore, the ALJ specifically found that Ms. Morgan's depression did not meet the "paragraph B" criteria to be considered a severe impairment. *Id.* This finding was based on the absence of impairment in the four functional areas set out in section 12.00C of the Listing of Impairments (20 C.F.R, Part 404, subpart B, Appendix I), in that Ms. Morgan had 1) no limitations in her activities of daily living; 2) no limitations in her social functioning; 3) no limitations in concentration, persistence or pace; and 4) no episodes of decompensation. *Id.*

Third, the ALJ determined that evidence failed to show that Ms. Morgan had an impairment or combination of impairments that met or medically equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P Appendix 1. *Id.* at 14. The ALJ explained that Ms. Morgan's asthma did not meet the listed standard because "there is nothing in the record to show that her attacks occurred once every two months or at least six times a year over an evaluation of 12 consecutive months." *Id.* Instead, "[i]t appears that the claimant reported to the emergency room sporadically from 2005 until 2009, but that when taking her

6

medication, she had no attacks since at least July 2013." *Id.* The ALJ also determined that Ms. Morgan had the "residual functional capacity to perform a full range of work at all exertional levels," as she "can occasionally work with exposure to dust, fumes, chemicals, odors, gases and other environmental irritants." *Id.* at 14-15.

Fourth, the ALJ determined that Ms. Morgan was able to perform past relevant work as a childcare provider. *Id.* at 15. Although Ms. Morgan testified that she is no longer able to work as a childcare provider, the medical reports only supported restrictions due to asthma. *Id.* According to "the Dictionary of Occupational Title . . . child care attendant (DOT code 359.677-01) does not require any exposure fumes, odors, dusts, gases, etc." *Id.* Thus, the ALJ concluded that Ms. Morgan would be able to resume her work as a childcare provider. *Id.*

Finally, the ALJ found that work existed in significant numbers in the national economy for Ms. Morgan based on her age, education, ability to speak English, work experience, and residual functional capacity. *Id.* at 16. The ALJ did not provide an enumerated list of existing jobs, but "the asthma limitations described above have little or no effect on the occupational base of unskilled work at all exertional levels." *Id.*

## IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Acting Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the Acting Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Acting Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

Although Ms. Morgan restated the history of her condition in her summary judgment motion, she failed to argue how the ALJ erred in his decision based upon the evidence in the record. The ALJ found that Ms. Morgan had a twelve month period where she did not engage in substantial gainful activity and that her asthma was a severe impairment. However, he also determined that her impairment did not meet or equal a listed impairment, did not prevent her from performing past relevant work, and did not prevent her from having substantial gainful employment. For the following reasons, the ALJ properly weighed the medical evidence and substantial evidence supported his conclusions.

There is substantial evidence in the record that Ms. Morgan's asthma did not meet or equal the Administration's Official Listing of Impairments found at 20 C.F.R. pt. 404, Subpt. P, App. 1. R. at 14. In order for asthma to meet or medically equal a listed impairment, the claimant must experience asthma attacks "at least once every two months or at least six times a year over an evaluation period of 12 consecutive months." *Id.* There is nothing in the record to

indicate that Ms. Morgan's asthma met this standard. Ms. Morgan reported to the Emergency Room for her asthma five times times between 2005 and 2009. *Id.* at 289-329. Additionally, once she started taking her inhaler, her symptoms improved and she has not had an asthma attack since at least July 2013. *Id.* at 233-34.[3] Therefore, there was substantial evidence that Ms. Morgan's asthma did not meet or medically equal a listed impairment.

Moreover, the ALJ's finding of Ms. Morgan's residual functional capacity is supported by substantial evidence in the record. The ALJ determined that Ms. Morgan was not disabled because "[she] had the residual functional capacity ("RFC") to perform a full range of work at all exertional level[s]" and that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." *Id.* at 14-15. Ms. Morgan worked as a childcare worker from January 1, 2011, through December 31, 2014. *Id.* at 31-32, 111-17. In that capacity, Ms. Morgan earned between $13,000 and $15,000 per year, affirming that her work as a childcare provider was substantial gainful activity. *Id.* at 111-24. Although Ms. Morgan stopped working at the shipyard because she had an asthma attack on the job, *id.* at 32, the ALJ accurately noted that very little medical evidence existed in the record, most of which consisted of medical visits for minor maladies, such as sore throats, stomach pain, and occasional asthma attacks, and that such maladies were treated conservatively. *Id.* at 15, 200-02, 210-25, 233, 235, 242, 251-56, 262-64, 280-84, 311, 322, 324 and 328. According to those records, objective medical tests were negative and Ms. Morgan was never provided anything more than conservative treatment. *Id.* As previously mentioned, Ms. Morgan has not incurred anything more than mild wheezing since she started using her steroid inhaler, and she has not had an asthma attack since 2013. *Id.* at 233-34.

---

[3] July 2013 was when the Request for Medical Records was issued to Ms. Morgan's primary care physician. *Id.* at 261. The last asthma treatment on record was in August 2012. *Id.* at 233-34.

9

Moreover, the ALJ gave great weight to the Disability Determination Service's ("DDS") opinion that Ms. Morgan could perform medium exertional work, although he concluded that the non-exertional residual functional capacity was the more appropriate determination. *Id.* at 15. In light of the objective medical evidence and the aforementioned findings, substantial evidence in the record supports the ALJ's finding for Ms. Morgan's RFC.

Further, there is substantial evidence in the record that Ms. Morgan's impairment does not prevent her from performing past relevant work as a childcare provider. Ms. Morgan worked as a child care worker for four years, *id.* at 31-32, 111-17, and her only area of nonexertional limitation is her difficulty with exposure to dust, fumes, chemicals, odors, gases, and other environmental irritants. *Id.* at 14, 44. "The Dictionary of Occupational Title description of childcare attendant does not require exposure to [any of those irritants]." *Id.* at 15. Therefore, the ALJ had substantial evidence to find that Ms. Morgan was able to perform her past work as a childcare attendant.[4]

Finally, Ms. Morgan's impairment does not prevent her from having substantial gainful employment. Ms. Morgan was 30 years old on the date her application was filed, she has limited education, and she speaks English. *Id.* at 38, 46. The ALJ noted that transferability of job skills is not an issue in this case because Ms. Morgan's previous work as a childcare worker is considered unskilled under 20 CFR 416.968. *Id.* at 16. Furthermore, there are jobs that exist in significant numbers in the national economy that Ms. Morgan can perform in lieu of her asthma, most notably her previous employment as a childcare attendant. *Id.* Ms. Morgan's ability to

---

[4] As previously stated, when looking at the five steps the ALJ must go through, "[a]n affirmative answer to question one, or negative answers to questions two or four, result in a determination of no disability." *Jackson*, 2014 WL 2859149, at *10 (citing 20 C.F.R. § 404.1520). Therefore, the ALJ's determination at question four that Ms. Morgan's impairment did not prevent her from performing past relevant work as a childcare attendant is sufficient to support his ultimate determination to deny Ms. Morgan SSI.

10

perform work at all exertional levels was compromised by the nonexertional limits of her asthma; however those limitations have little to no effect on "the occupational base of unskilled work at all exertional levels." *Id.* Therefore, there was sufficient evidence in the record to support the ALJ's finding that Ms. Morgan's impairment does not prevent her from having substantial gainful employment.

## VI. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that Ms. Morgan's Motion for Summary Judgment, ECF No. 19, be **DENIED**, the Defendant's Motion for Summary Judgment, ECF No. 21, be **GRANTED**, and the final decision of the Acting Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE.**

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a

judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

/s/ Lawrence R. Leonard
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
June 30, 2017